JOSEPH H. HUNT
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
GLENN M. GIRDHARRY
*Assistant Director*
SAMUEL P. GO
*Senior Litigation Counsel*
T. BENTON YORK
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: Thomas.B.York@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| H. FRANK FIFE and JOHN G. AND ELIZABETH STEELMAN FOUNDATION, <br><br> *Plaintiffs,* <br><br> v. <br><br> WILLIAM P. BARR, in his official capacity as Attorney General of the United States and executive of the U.S. Department of Justice, et al. <br><br> *Defendants.* | HON. NOEL J. HILLMAN <br><br> *Civil Action No.* 19-13912 <br><br> RETURN DATE: [October 21, 2019] |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*On the brief:*
Benton York
Trial Attorney

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................... 1

STATEMENT OF FACTS ..........................................................................2

STATUTORY AND PROCEDURAL BACKGROUND........................................ 5

    I.     Expedited Removal Under the INA..................................................5

    II.    Jurisdictional Channeling Provisions...............................................9

    III.   Availability and Requirements for F-1 Student Visas........................11

STANDARD OF REVIEW.........................................................................13

    I.     Federal Rule of Civil Procedure 12(b)(1) Standard...........................13

    II.    Federal Rule of Civil Procedure 12(b)(6) Standard...........................14

ARGUMENT........................................................................................14

    I.     Plaintiffs' Claims Are Not Justiciable............................................14
         A. The Court Lacks Subject Matter Jurisdiction.............................14
         B. Plaintiffs Lack Standing...................................................16
              1)  *Plaintiffs have not demonstrated an "injury in fact."*......16
              2)  *Plaintiffs have not shown an injury in fact that is*
                   *"fairly traceable" to Defendants*..............................19
              3)  *Plaintiffs fail the prudential factors for standing*..........22

    II.    Plaintiffs Failed to State a Claim................................................26
         A. Plaintiffs' Claims Pursuant to 42 U.S.C. § 1983 Should be
           Dismissed...................................................................26
          B. Plaintiffs' APA Claim Should Be Dismissed............................. 26
         C. Plaintiffs' Mandamus Claim Should Be Dismissed....................30

CONCLUSION......................................................................................30

CERTIFICATE OF SERVICE.................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Alaka v. Att'y Gen. of U.S.*,
   456 F.3d 88 (3d Cir. 2006) ....................................................................... 37

*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................. 23

*Am. Immigration Lawyers Ass'n v. Reno*,
   18 F.Supp.2d 38 (D.D.C. 1998) ................................................... 15, 17, 24

*Bakhtriger v. Elwood*,
   360 F.3d 414 (3d Cir. 2004) ....................................................................... 10

*Bakran v. Sec'y, United States Dep't of Homeland Sec.*,
   894 F.3d 557 (3d Cir. 2018) ................................................................... 2, 37

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 19

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................. 30

*Berkery v. C.I.R.*,
   No. 09-cv-4944, 2010 WL 99376 (E.D. Pa. Jan. 11, 2010) ....................... 40

*Califano v. Sanders*,
   430 U.S. 99 (1977) ................................................................................... 36

*Camins v. Gonzales*,
   500 F.3d 872 (9th Cir. 2007) ...................................................................... 6

*Castro v. United States Dep't of Homeland Sec.*,
   835 F.3d 422 (3d Cir. 2016) .............................................................. passim

*Chehazeh v. Att'y Gen. of U.S.*,
   666 F.3d 118 (3d Cir. 2012) ...................................................................... 36

*Doe v. Civiletti*,
   635 F.2d 88 (2d Cir. 1980) ....................................................................... 39

*Dunn & Black, P.S. v. United States,*
    492 F.3d 1084 (9th Cir. 2007) ................................................................. 38

*Essex v. Vinal,*
    499 F.2d 226 (8th Cir. 1974) ................................................................... 39

*Finkelman v. Nat'l Football League,*
    810 F3d 187 (3d Cir. 2016) ........................................................ 27, 28, 29

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................ 22

*Gilbert v. DaGrossa,*
    756 F.2d 1455 (9th Cir. 1985) ................................................................. 38

*Hindes v. F.D.I.C.,*
    137 F.3d 148 (3d Cir. 1998) ........................................................ 3, 35, 36

*Hing Sum v. Holder,*
    602 F.3d 1092 (9th Cir. 2010) ................................................................... 7

*Hinkel v. England,*
    349 F.3d 162 (3d Cir. 2003) .......................................................... 3, 9, 40

*Hou Hawaiians v. Cayetano,*
    183 F.3d 945 (9th Cir. 1999) ................................................................... 39

*Innovation Law Lab, et al. v. McAleenan,*
    *et al.*, 924 F.3d 503 (9th Cir. 2019) ...................................................... 11

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ...................................................................... 10, 11

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir.1993) ................................................................. 19, 20

*Kucana v. Holder,*
    558 U.S. 233 (2010) .................................................................................. 8

*Land v. Dollar,*
    330 U.S. 731, (1947) ................................................................................ 18

*Lane v. Pena,*
    518 U.S. 187 (1996) ................................................................................ 38

*Li v. Gonzales,*
  No. CIV.A.06-5911 SRC, 2007 WL 1303000 (D.N.J. May 3, 2007) ........................ 19

*Lucas v. Gulf & W. Indus., Inc.,*
  666 F.2d 800 (3d Cir. 1981).................................................................... 17, 18

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................. 22, 23, 26, 27

*Lujan v. Nat'l Wildlife Federation,*
  497 U.S. 871 (1990) ........................................................................... 4, 5, 6

*M.S.P.C. v. U.S. Customs and Border Protection,*
  60 F.Supp.3d 1156 (D.N.M. 2014) .............................................................. 5, 9

*Maio v. Aetna, Inc.,*
  221 F.3d 472 (3d Cir. 2000)...................................................................... 29

*McClain v. Pan. Canal Comm'n,*
  834 F.2d 452 (5th Cir. 1987) .................................................................... 39

*Mortensen v. First Federal Sav. & Loan Ass'n,*
  549 F.2d 884 (3d Cir.1977)...................................................................... 19

*Mudric v. Att'y Gen'l of U.S.,*
  469 F.3d 94 (3d Cir. 2006)................................................................... 23, 25

*Muirhead v. Mecham,*
  427 F.3d 14 (1st Cir. 2005)...................................................................... 39

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith
  Brown,*
  692 F.3d 283 (3d Cir. 2012)..................................................................... 20

*Odd v. United States,*
  No. 91–35954, 1992 WL 184330 (9th Cir. Aug.4, 1992) ........................................ 39

*Omar v. Mueller,*
  501 F. Supp. 2d 636 (D.N.J. 2007)............................................................... 18

*Paul v. Davis,*
  424 U.S. 693 (1976) .......................................................................... 23, 24

*S.M. v. Del. Dep't of Educ.,*
  77 F.Supp.3d 414 (D. Del. 2015) ........................................................... 26

*Shaughnessy v. Mezei,*
  345 U.S. 206 (1953) ................................................................................ 12

*Steinbach v. Fed. Bur. of Prisons,*
  339 F.Supp.2d 628 (D.N.J. Oct. 13, 2004) ........................................ 39, 40

*Suryanto v. Att'y Gen'l of U.S.,*
  398 F.App'x 830 (3d Cir. 2010) .............................................................. 25

*Trackwell v. U.S. Gov't,*
  472 F.3d 1242 (10th Cir. 2007) .............................................................. 39

*United States v. Williams,*
  514 U.S. 527 (1995) ................................................................................ 38

*Valley Forge Christian College v. Ams. Unt'd for Separation of Church and State,*
  454 U.S. 464 (1982) ............................................................... 30, 31, 33, 34

*Vartelas v. Holder,*
  566 U.S. 257 (2012) .............................................................................. 7, 8

*Vishnevsky v. United States,*
  581 F.2d 1249 (7th Cir. 1978) ................................................................ 39

*Volcy v. United States,*
  469 F.App'x 82 (3d Cir. 2012) ................................................................ 40

*Wash. Legal Found. v. U.S. Sentencing Comm'n,*
  89 F.3d 897 (D.C.Cir.1996) .................................................................... 39

## Statutes

5 U.S.C. §§ 701 ......................................................................................... 2

5 U.S.C. §§ 701(a)(1) and (2) ..................................................................... 2

5 U.S.C. § 701(a)(1) ................................................................................. 37

5 U.S.C. § 706(2)(A) ................................................................................ 36

8 U.S.C. § 1101(a)(13) (1988 ed.) .............................................................. 7

8 U.S.C. § 1101(a)(13)(A) ........................................................... 8

8 U.S.C. § 1182(a)(6)(C) ........................................................... 11

8 U.S.C. § 1184(c)(1) ........................................................... 32

8 U.S.C. § 1225(b) ........................................................... 8

8 U.S.C. § 1225(b)(1) ........................................................... 10

8 U.S.C. § 1225(b)(2) ........................................................... 10

8 U.S.C. § 1229a ........................................................... 8

8 U.S.C. § 1252(b)(1) ........................................................... 1

8 U.S.C. § 1252(e)(2) ........................................................... 14

8 U.S.C. § 1252(g) ........................................................... 13

8 U.S.C. § 1255(b)(2) ........................................................... 5, 10

28 U.S.C. § 1361 ........................................................... 39, 40

28 U.S.C. §§ 1331 and 1361 ........................................................... 3, 36, 37

42 U.S.C. § 1983 ........................................................... 2, 35

## Rules

Fed. R. Civ. P. 12(h)(3) ........................................................... 18

Federal Rule of Civil Procedure 12(b)(1) ................................... 17

Federal Rule of Civil Procedure 12(b)(6) ........................... 19, 42

## Regulations

8 C.F.R. § 214.2(f)(1)(i) ........................................................... 29, 33

8 C.F.R. § 214.2(f)(5) ........................................................... 16, 17

8 C.F.R. § 235.3 ........................................................... 12

8 C.F.R. §§ 214.2 ........................................................... 16

22 C.F.R. §§ 62.2 ................................................................................................... 25

**Other Authorities**

69 Fed. Reg. 48877 .............................................................................................. 9

## <u>PRELIMINARY STATEMENT</u>

The Court should dismiss Plaintiffs' complaint because their claims are not justiciable.  The two Plaintiffs are H. Frank Fife ("Fife"), a U.S. citizen, and the John G. and Elizabeth Steelman Foundation ("the Foundation"), a U.S. nonprofit charitable organization operating in New Jersey. Compl. at 2. Each of the Defendants is a federal officer named in their official capacity under federal law. *Id.* at 3. Neither Plaintiff claims to have been denied any immigration benefit. Instead, the majority of their 80-page complaint is directed at challenging the July 30, 2017 expedited removal of Erika Contreras Cruz ("Contreras"), a citizen and resident of Mexico who is not a party to this lawsuit. *See generally id.* Although Plaintiffs have no legally cognizable relationship to Contreras, they nonetheless challenge that 2017 removal and seek, *inter alia*, her readmission to the United States.

Plaintiffs' claims are not justiciable for multiple reasons. First, this Court lacks subject matter jurisdiction over their challenge to Contreras's expedited removal. 8 U.S.C. § 1252(b)(1). "[Section] 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute," *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 448–49 (3d Cir. 2016), *cert denied* 137 S. Ct. 1581 (Apr. 17, 2017), and Plaintiffs do not raise any claim under that provision. Second, Plaintiffs lack standing because they failed to show any legally cognizable injury that is fairly traceable to Defendants. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Third, Plaintiffs' claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*,

equally fail because the APA does not provide review where another statute specifically precludes review. *Bakran v. Sec'y, United States Dep't of Homeland Sec.*, 894 F.3d 557, 562 (3d Cir. 2018). Here, the Immigration and Nationality Act's ("INA") jurisdiction stripping provisions prevent APA review of Plaintiffs' claims arising from Contreras's expedited removal. 5 U.S.C. §§ 701(a)(1) and (2). Fourth, five of the ten counts asserted in the complaint invoke 42 U.S.C. § 1983 for claims against federal officials acting under color of *federal* law, but that statute creates a cause of action solely against officials acting pursuant to *state* law. *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998). Fifth, Plaintiffs have failed to establish that the United States has waived its sovereign immunity pursuant to the jurisdictional provision in 28 U.S.C. §§ 1331 and 1361.  Because Plaintiffs have not specified a nondiscretionary duty that Defendants failed to perform, the Court lacks jurisdiction under the Mandamus Act as well. *Hinkel v. England*, 349 F.3d 162, 164 (3d Cir. 2003). Accordingly, Plaintiffs' complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

The complaint[1] alleges that Fife is an financial advisor in his late seventies living in Linwood, New Jersey. *Id*. at 29. During the relevant time period, Fife served as a trustee for the Foundation. *See* Doc. 1-1 at 30. At some point, "[a] cousin put Contreras in contact with … Fife and his wife," and "[a]fter communicating several

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and all well-pleaded facts alleged in the complaint are taken as true.  *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990). Therefore, Plaintiffs' allegations cited herein are taken from Plaintiffs' complaint and are assumed true for purposes of this motion only.

times to acquaint themselves, Contreras and … Fife discussed possible F-1 nonimmigrant sponsorship and occupational job training under DHS'[s] STEM OPT program after Contreras completed" her studies.[2] Compl. at 29. Fife saw financial sponsorship as "an opportunity to expand financial services to the Spanish-speaking community in the future." *Id*. Accordingly, in April 2012, he agreed to "accept responsibility for [her] tuition and fees, housing, transportation, personal needs and welfare" during her studies. Doc. 1-1 at 24. Fife's Foundation awarded Contreras a scholarship. *Id*. at 30. Fife executed an affidavit swearing that "[t]he student cannot be required to provide [him] with any services, such as babysitting, cleaning, etc., in exchange for room and board." *Id*. at 38.

During the course of her studies at ACCC, Contreras returned home to Mexico on two occasions in response to family emergencies there, both times withdrawing from studies at ACCC, and then returned a third time in the summer of 2017. *Id*. at 35-37. When Contreras attempted to reenter the United States at Del Rio, Texas in December 2016 for the coming spring semester, Plaintiffs allege that she was not admitted because her student record in the Student Exchange Visitor Information System ("SEVIS") was changed by her school from "Active" to "Terminated" after ACCC reported in the database Contreras's "Authorized Early Withdrawal" from her program of study in September 2016. *Id*. at 34. Despite having no obligation to do so, CBP officers permitted Contreras to contact school officials at ACCC to have her

---

[2] The term "sponsorhip" has no legal significance in the F-1 visa context, and Plaintffs' use of that term throughout their complaint merely describes their gratuitous choice to provide financial support to Contreras for the cost of her education.

student record amended to "Active," *id*. at 35, and according to her sworn statement, CBP informed her that she would need to reapply for and be granted a student visa for future admission as an F-1 nonimmigrant student. Doc. 1-1 at 140. Contreras was later admitted on January 3, 2017. *Id*.

After returning to Mexico a third time, she again sought admission to the United States on July 29, 2017, flying from Mexico to Houston. *Id*. at 48. At the George Bush Intercontinental Airport, CBP officers interviewed her, and, as she admitted in her sworn statement, she was unable to present a valid F-1 visa. Doc. 1-1 at 141. To be admitted to the United States, an individual must prove that they are "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1255(b)(2). Contreras's answers during her interview, however, failed to establish that she was a bona fide non-immigrant student. Doc. 1-1 at 141. Because she lacked authorization to enter as an immigrant, she was issued a "Notice and Order of Expedited Removal" informing her:

> You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA], to wit: you previously engaged in unauthorized employment, you do not have a valid entry document and being an immigrant without documents as you cannot overcome the presumption of being an intended immigrant.

Doc. 1-1 at 149-50. Consequently, Contreras was subject to a final order of removal on July 30, 2017. *Id*.

According to the complaint, Contreras submitted a letter to the U.S. Attorney General and CBP on February 28, 2018—seven months after her final order of

removal. Doc. 1 at 51. On March 26, 2018, CBP issued a letter informing Contreras that CBP declined to rescind her expedited removal. *Id.* at 52. Since then, per the complaint, Contreras reapplied for a new F-1 visa through the U.S. Consulate in Mexico, but has not been granted one because she remains subject to a five-year bar from entry. *Id.* at 52-53.

## STATUTORY AND PROCEDURAL BACKGROUND

### I.   Expedited Removal Under the INA

The Immigration and Nationality Act ("INA") governs admissions of noncitizens into the United States. 8 U.S.C. §§ 1101, *et seq.* In 1996, Congress exercised its plenary power over immigration by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), replacing much of the INA with a new and "comprehensive scheme for determining the classification of … aliens," *Camins v. Gonzales*, 500 F.3d 872, 879 (9th Cir. 2007), including expedited removal. Prior to 1996, the INA "established two types of proceedings in which aliens can be denied the hospitality of the United States: deportation hearings and exclusion hearings." *Vartelas v. Holder*, 566 U.S. 257, 261 (2012). Exclusions—which accorded fewer procedural rights than deportations—were for "aliens seeking entry to the United States," while deportations were for "aliens who had already entered this country." *Id.* "'[E]ntry' into the United States was defined as 'any coming of an alien into the United States, from a foreign port or place.'" *Id.* (quoting 8 U.S.C. § 1101(a)(13) (1988 ed.)). Thus, "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in

deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).

Congress passed "IIRIRA [to] address[] this anomaly by" eliminating the concept of "entry," exclusion, and deportation proceedings, replacing them with a uniform "removal" procedure. *Id.*; *see also Vartelas*, 566 U.S. at 261–62. Removability now turns on whether an alien is admissible or has been "admitted," defined as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Aliens arriving in the United States or present in the United States without having been admitted are now "applicants for admission," *id.* § 1225(a)(1), and generally aliens "seeking admission" who fail to "clearly and beyond a doubt" demonstrate an entitlement "to be admitted," are detained for a removal proceeding pursuant to section 1229a. *Id.* § 1225(b)(2)(a).

Nevertheless, IIRIRA provided expedited removal proceedings, codified at 8 U.S.C. § 1225(b), to ensure that the Executive could both "expedite removal of aliens lacking a legal basis to remain in the United States," *Kucana v. Holder*, 558 U.S. 233, 249 (2010); *see* S. Rep. No. 104-249 (1996), and deter individuals from exposing themselves to the dangers associated with illegal immigration, H.R. Rep. No. 104-469, pt. 1, at 117 (1996). "Hence, the pivotal factor in determining" what sort of proceeding an alien is entitled to "will be whether or not the alien has been lawfully admitted," not whether he steps upon U.S. territory. *Kucana*, 558 U.S. at 225.

6

The statute applies with equal force to arriving aliens and to illegal entrants within 100 miles of the border who cannot show that they have been physically present in the United States continuously for the fourteen-day period immediately preceding the date of their apprehension. 8 U.S.C. § 1225(b)(l)(A)(iii); 69 Fed. Reg. 48877, 48880 (Aug. 11, 2004). In such circumstances, the entrants have not developed the ties or property interests that a lawful permanent resident or even an illegal entrant residing here for a significant period may have developed. *See, e.g., Castro*, 835 F.3d at 448–49; *M.S.P.C. v. U.S. Customs and Border Protection*, 60 F.Supp.3d 1156, 1173-76 (D.N.M. 2014), *vacated as moot*, No. 14–769, 2015 WL 7454248 (D.N.M. Sept. 23, 2015).

To promote the efficient administration of the immigration laws, Congress provided a mechanism by which certain inadmissible "arriving aliens" are subject to "expedited removal." 8 U.S.C. § 1225. This statutory regime conferred on Executive Branch officers considerable authority to remove certain aliens while restricting judicial review of deportation and other exclusion decisions. *See Bakhtriger v. Elwood*, 360 F.3d 414, 418 (3d Cir. 2004). An immigration officer, upon encountering an applicant for admission, must first determine whether the alien is clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1255(b)(2); *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018); *Matter of M-S-*, 27 I. & N. Dec. 509, 510 (A.G. 2019). If the alien is not, the officer must determine whether the alien is eligible for, and should be subjected to, the expedited removal procedure by applying 8 U.S.C. § 1225(b)(1),

7

or else should be afforded a "full" removal proceeding by applying 8 U.S.C. § 1225(b)(2). *Jennings*, 138 S. Ct. at 837; *Matter of M-S-*, 27 I. & N. Dec. at 510.

Congress specifically designed expedited removal to remove certain aliens quickly without extensive procedures. *See Jennings*, 138 S. Ct. at 837; *Innovation Law Lab, et al. v. McAleenan, et al.*, 924 F.3d 503, 508 (9th Cir. 2019) (in expedited removal, an immigration officer "decides inadmissibility on the spot without sending the matter to an immigration judge"). Section 1225(b)(1)(A)(i) provides (subject to exemptions and additions not relevant here) that an applicant for admission is eligible for expedited removal when he engaged in fraud or made a willful misrepresentation of a material fact in an attempt to gain admission to the United States or obtain another immigration benefit, 8 U.S.C. § 1182(a)(6)(C), or because he has no valid visa, passport, or other required travel document. *Id.* § 1182(a)(7). If the immigration officer "determines" that an alien meets one of those criteria, the officer "shall order the alien removed from the United States without further hearing or review," unless the alien indicates either an intention to apply for asylum or a fear of persecution. *Id.* § 1225(b)(1)(A)(i).

Expedited removals made pursuant to section 1225(b)(1) and 8 C.F.R. § 235.3, may be applied to certain categories of aliens, including aliens who are present in the United States without having been admitted or paroled following inspection by a CBP Officer at a designated port of entry ("POE") and who are encountered by a CBP agent within 100 air miles of the U.S. international border and who have not established to the satisfaction of the CBP official that they have been physically present in the U.S.

continuously for the 14-day period immediately prior to the date of encounter will be processed using expedited removal proceedings. Thus, both the Office of Field Operations and Office of Border Patrol are authorized and charged with the use of expedited removal to enforce the INA's admissibility requirements.

## II.    Jurisdictional Channeling Provisions

The U.S. Supreme Court has made clear that "[w]hatever the procedure authorized by Congress is, it is due process as an alien denied entry is concerned." *Shaughnessy v. Mezei*, 345 U.S. 206, 212 (1953). Indeed, "[d]ue process does not invest any alien with a right to enter the United States." *Id*. at 222 (JACKSON, J. dissenting). To further promote the purposes of expedited removal, Congress through section 1252 "narrowly circumscribe[d] judicial review for expedited removal orders issued pursuant to § 1225(b)(1)." *Castro*, 835 F.3d at 426. To that end, "[e]xcept as provided in [section 1252] and notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, judicial cases, or executed removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). *See also id*. § 1252(a)(2)(A)(iii) ("Notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to review … the application of [section 1225(b)(1)] to individual aliens, including the [credible fear] determination made under section 1225(b)(1)(B) of this title.")

Except as provided in section 1252(e), the statute strips courts of jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim

arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal regime; and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1)]." *Id.* § 1252(a)(2)(A)(i), (ii) & (iv). Accordingly, as the Third Circuit has recognized, "the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under [section] 1252(e)," which "for its part, preserves judicial review for only a small subset of issues relating to individual expedited removal orders." *Castro*, 835 F.3d at 426–27. Specifically, that subsection provides:

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
>
> **(A)** whether the petitioner is an alien,
>
> **(B)** whether the petitioner was ordered removed under such section, and
>
> **(C)** whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee…, or has been granted asylum….

8 U.S.C. § 1252(e)(2).

Section 1252(e)(3) provides the only remaining avenue for jurisdiction in the expedited removal context, allowing for "[c]hallenges on validity of the system." That statute dictates that "[j]udicial review of determination under section 1225(b) … and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—whether

such section, or any regulation issued to implement such section, is constitutional; or whether such a regulation…is not consistent with applicable" statutory provisions. *Id*. § 1252(e)(3)(A). Any action brought pursuant to section 1252(e)(3)(A) "must be filed no later than 60 days after the date of the challenged section, regulation, directive, guideline, or procedure … is first implemented." *Id*. § 1252(e)(3)(B). *See also Am. Immigration Lawyers Ass'n v. Reno*, 18 F.Supp.2d 38, 47 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) (holding that "the 60–day requirement is jurisdictional rather than a traditional limitations period").

## III.    Availability and Requirements for F-1 Student Visas

The United States provides nonimmigrant temporary visas, known as F-1 visas, for noncitizens to study at U.S. learning institutions. "Nonimmigrant" classifications convey permission for a foreign national to seek admission to the United States temporarily for a specific purpose.  The F-1 nonimmigrant student classification allows foreign nationals "having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" at a qualifying educational institution. 8 U.S.C. § 1101(a)(15)(F)(i). To qualify for an F-1 visa, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status ("Form I-20"), issued by an approved school, and (3) submit a visa

application at the U.S. Embassy or Consulate where the foreign national resides.[3] The foreign national is required to demonstrate both an intent to pursue a full course of study at the school named on the Form I-20 as well as an intent to leave the United States upon completion of the course of study or a defined period of authorized practical training. F-1 visa-holders are admitted for "duration of status," meaning the student is authorized to stay in the United States while he or she is pursuing a full course of study at an approved educational institution or engaging in authorized practical training following the completion of his or her studies.  8 C.F.R. § 214.2(f)(5). There is, however, no statutory or regulatory requirement that a student "find, or be paired with, sponsors to participate in student visa programs." *Compare with* Compl. at 28.

The provision and considerations relating to an alien's maintenance of F-1 status after admission to the United States are highly regulated, with extensive reporting obligations placed on participating schools and detailed eligibility restrictions for students. *See, e.g.*, 8 C.F.R. §§ 214.2, 214.3, 214.4. For example, each school authorized to enroll F-1 students must have a Designated School Official ("DSO") who monitors, advises, and oversees the students attending that institution consistent with reporting obligations to Immigration Customs Enforcement ("ICE") through its Student and Exchange Visitor Program ("SEVP"). *Id*. §§ 214.2(f)(1)(iii), 214.3(g), 214.4(a)(2). DSOs at participating schools must report specific student

---

[3] To be eligible for the visa in the first place, a student, *inter alia*, must obtain "a SEVIS Form I-20 issued in [their] name by a school approved by [the Department of Homeland Security ("DHS")] for attendance by F-1 students," as well as submit "documentary evidence of financial support in the amount indicated on the SEVIS Form I-20." 8 C.F.R. § 214.2(f)(1)(i)(A), (B).

information, including information pertaining to nonimmigrant students' enrollment and withdrawal from programs of study, through entry into the Student Exchange Visitor Information System ("SEVIS"). *Id*. § 214.3(g)(1). In other words, student information maintained in SEVIS is primarily entered by officials at certified U.S. institutions. To maintain F-1 status, a student must, *inter alia*, maintain a "full course of study" and must not be employed in the United States unless expressly authorized in accordance with regulation. *E.g.*, 8 C.F.R. § § 214.2(f)(5),(9) and (10).

## STANDARD OF REVIEW

### I.      Federal Rule of Civil Procedure 12(b)(1) Standard

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See Lucas v. Gulf & W. Indus., Inc*., 666 F.2d 800, 805 (3d Cir. 1981); *see also Omar v. Mueller*, 501 F. Supp. 2d 636 (D.N.J. 2007); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs bear the burden of establishing that the Court has subject matter jurisdiction over their complaint. *See Lucas*, 666 F.2d at 805; *see also Omar*, 501 F. Supp. 2d at 636. When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court may review evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction without converting the motion to one for summary judgment. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n.4, (1947) ("when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist."). Moreover, on a 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *see also Li v. Gonzales*, No. CIV.A.06-5911 SRC, 2007 WL 1303000, at *1 (D.N.J. May 3, 2007).

## II.    Federal Rule of Civil Procedure 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Under Rule 12(b)(6), allegations of fact in the complaint are taken as true and are construed in the light most favorable to the nonmoving party. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

## <u>ARGUMENT</u>

## I.    Plaintiffs' Claims Are Not Justiciable.

### A.    <u>The Court Lacks Subject Matter Jurisdiction</u>.

Plaintiffs, as the side asserting jurisdiction, bear the burden of proving that jurisdiction exists. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown*, 692 F.3d 283, 293 (3d Cir. 2012). Plaintiffs' complaint requests various forms of relief, but all are ultimately geared toward challenging Contreras's expedited removal. *See, e.g.*, Compl. at 55 (requesting Contreras's student visa be "revalidate[d] and reinstate[d]" and to "[r]emove her five (5) year ban on reentry and allow her to reenter the United States."). Such relief is not available. As the Third

Circuit has instructed, "[section] 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute," and "unless the petitioner wishes to challenge the 'validity of the system' as a whole rather than as applied to her, the district courts' jurisdiction is limited to three narrow issues," none of which applies here.[4] *Castro*, 835 F.3d at 430.

Here, Plaintiffs do not purport to challenge the expedited removal system as a whole, and even if they did, such challenges may only be brought in the District Court for the District of Columbia and within 60 days of the challenged rule's issuance. 8 U.S.C. § 1252(e)(3)(A)-(B). Their attempt to frame their lawsuit as a review of an individual's F-1 nonimmigrant student status cannot skirt Congress's clear framework for ensuring the efficient enforcement of the immigration laws at ports of entry. Any argument by Plaintiffs to that effect would be merely "attempting to create ambiguity where none exists." *See Castro*, 835 F.3d at 431.

In short, it is settled law in the Third Circuit that courts lack jurisdiction to review expedited removal orders like the one applied to Contreras. "Congress has unambiguously limited the scope of judicial review, and in so doing has foreclosed review of [Plaintiffs'] claims." *Id*. Accordingly, Plaintiffs' complaint should be dismissed in its entirety.

---

[4] 8 U.S.C. § 1252(e)(2)(A)-(C) (whether the petitioner is an alien; whether the petitioner was ordered removed under such section; and whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee…, or has been granted asylum.)

B. <u>Plaintiffs Lack Standing</u>.

Article III standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy Article III, "a plaintiff must show (1) it has suffered an 'injury in fact'[;] . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. "When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed." *Id.* at 562 (emphasis in original).  Accordingly, as is the case here, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* Plaintiffs have not met their burden.

1) *Plaintiffs have not demonstrated an "injury in fact."*

The Supreme Court has described an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 562 (citing, *inter alia*,

*Allen v. Wright*, 468 U.S. 737 (1984)) (internal citations omitted). The complaint fails this standard.

In Count I, Plaintiffs claim that the Contreras's removal constituted a violation of the Plaintiffs' "Liberty Interests." Compl. at 54. "It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen'l of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006). The right to due process attaches only where the asserted liberty interest is recognized as a protected one by the U.S. Constitution or statute. *Paul v. Davis,* 424 U.S. 693, 708–09 (1976). Here, Plaintiffs have identified no such "liberty interest" or "property interest" to which they are entitled under the Constitution or any statute.

Plaintiffs have styled themselves as "sponsors", without citing any legal support for their contention, and refer to Contreras as their "student designee," contending that Defendants "violated their liberty interests to sponsor the F-1 student visa holder, and potential STEM OPT participant of their choosing, without due process of law." *Id.* at 54-55. They argue, without citing to any support, that the Defendants "enticed [the Plaintiffs] to sponsor Contreras through their promotion and administration of the F-1 student visa and STEM OPT programs." *Id*. Plaintiffs use of the terms "student designee," "sponsor," and "participant of their choosing" have no legal significance. Contrary to Plaintiffs' claims, federal law does not require or otherwise provide for nonimmigrant student "sponsors." This language creates the incorrect impression that Plaintiffs are somehow a recognized or necessary entity in the F-1 visa framework. Indeed, there is no requirement that an F-1 visa holder

obtain a so-called host family to be granted an F-1 visa or be admitted as an F-1 student. The absence of such a requirement is highlighted by contrast to the J-1 visa context. *See, e.g.*, 22 C.F.R. §§ 62.2 (defining "sponsor" in the context of J visa "exchange visitor program); 62.3 (governing "[s]ponsor eligibility for "designation as a sponsor of an exchange visitor program"); 62.4 (categories of eligible participants for the exchange visitor program); 62.5 (application process to become a "sponsor" for the exchange visitor program).  In other words, that term is one with a legal significance in the context of other nonimmigrant visa programs, but it has no application to the F-1 visa program in which Contreras allegedly participated. To the extent there was anything like a "sponsor" for Contreras's visa, it was ACCC, the school that issued her the Form I-20 which enabled her to apply for an F-1 nonimmigrant student visa.

Plaintiffs have no familial or other significant relation to Contreras, and in essence are simply people who understandably wish that she was still present in the United States. The Third Circuit has declined to recognize a "liberty interest" in far less attenuated circumstances, including its determination that a noncitizen "does not have a sufficient property or liberty interest in the adjustment of *his* [*own*] *status* to qualify for due process protection." *Suryanto v. Att'y Gen'l of U.S.*, 398 F.App'x 830, 834 (3d Cir. 2010) (emphasis added); *Mudric*, 469 F.3d at 99 ("No constitutional injury occurred from the INS delays in this case because [the plaintiff] simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived."); *See also S.M. v. Del. Dep't of Educ.*, 77 F.Supp.3d 414, 419

(D. Del. 2015) (no protected property interest for students' wishing to continue attending their same school); *Barmo v. Reno*, 899 F.Supp.1375, 1384 (E.D. Pa. 1995) (no liberty interest for noncitizen with past marriage fraud to be reunited with spouse).

To the extent that Plaintiffs claim their interest in the "potential STEM OPT participant of their choosing" is asserted as a basis for standing, this likewise fails because it is purely "conjectural" and "hypothetical" that a discretionary benefit under the STEM OPT program would have been granted to Contreras, and Plaintiffs make no factual allegations establishing that such a benefit was "actual or imminent." *Lujan*, 504 U.S. at 562.

2) *Plaintiffs have not shown an injury in fact that is "fairly traceable" to Defendants.*

In Count II, Plaintiffs assert their "Property Interests" were violated because their "vested scholarship and sponsorship monies, required by the F-1 student visa program and ACCC sponsorship agreements, were lost when Defendants denied Contreras's F-1 nonimmigrant student visa without due process of law," and they request with each count in the complaint an award of "lost scholarship and sponsorship moneys," in addition to attorney's fees and EAJA fees. Compl. at 57-58. Although loss of funds is a classic type of legal injury, here, Plaintiffs' expenditure of funds does not constitute an injury in fact sufficient for standing because they have failed to show any lost funds "fairly traceable" to any action by the Defendants.

"To show the requisite causal connection, [Plaintiffs] must allege sufficient facts to plausibly support 'a causal connection between the injury and the conduct

19

complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 247 (3d Cir. 2012) (quoting *Lujan*, 504 U.S. at 560); *Finkelman v. Nat'l Football League*, 810 F3d 187, 193 (3d Cir. 2016) ("fairly traceable" means "not the result of the independent action of some third party not before the court").

Plaintiffs' allegations are more attenuated than those in *Finkelman*, a lawsuit brought by an individual who purchased a ticket to the Super Bowl on the resale market at a price substantially higher than face value. 810 F.3d at 197. Finkelman claimed the price he paid on the resale market was overinflated because the NFL only made available 1% of tickets to the general public, allegedly in violation of New Jersey statute. *Id*. at 189. Those tickets available to the general public, however, were sold via a ticket lottery in which Finkelman did not participate. *Id*. at 197. The court held Finkelman failed to show standing because "[i]nsofar as [the court] construe[d] the complaint to allege that Finkelman paid more for his tickets than he would have absent the NFL's alleged misconduct, that contention is a 'bald assertion' unsupported by well-pleaded facts." *Id*. at 202.

Plaintiffs' contentions here likewise constitute mere bald assertions. To the extent Plaintiffs disbursed funds for Contreras's continued studies after she sought reentry and was denied admission, any injury cannot be fairly traceable to the government, as they are a third party to the F-1 visa process as well as to Contreras's obligation to ACCC to pay for her education. If such funds were disbursed directly to

20

Contreras or to ACCC, the alleged harm stems from Contreras's and/or ACCC's acceptance of Plaintiffs' money, rather than from any action taken by the government.

Plaintiffs have alleged no facts to support their conclusory allegation that Defendants "enticed" Plaintiffs to provide funds to Contreras while she was studying in the United States. Instead, the complaint merely alleges that Plaintiffs voluntarily agreed to help Contreras with the cost of her education. Contreras was obligated to present documentary evidence that she had sufficient financial support to cover her education, 8 C.F.R. § 214.2(f)(1)(i)(B), but Plaintiffs cite no authority to suggest she was required to secure financing for education through a purported "sponsor" or "host family."

The Third Circuit has made clear that "even at the pleading stage, '[courts] need not accept as true unsupported conclusions and unwarranted inferences.'" *Finkelman*, 810 F.3d at 202 (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000)). Here, Plaintiffs' claims of "enticement," "sponsorship," and lost funds constitute class "unsupported conclusions and unwarranted inferences." Moreover, they have not pleaded facts establishing a legally cognizable injury that is fairly traceable to any action or inaction by Defendants. Accordingly, Plaintiffs "failed to show the requisite causal relationship between the alleged misconduct and [their] alleged injury," and they failed to show standing. *In re Schering Plough Corp.*, 678 F.3d at 248.

3) *Plaintiffs fail the prudential factors for standing.*

In addition to the "'immutable requirements of Article III,' the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Bennett v. Spear,* 520 U.S. 154, 162 (1997) (citation omitted). They are: (1) "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *Valley Forge Christian College v. Ams. Unt'd for Separation of Church and State,* 454 U.S. 464, 474 (1982) (citation omitted); (2) "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches," *Id.* at 474–75 (citation omitted); and (3) "the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.*

Plaintiffs fail to meet these standards. First and foremost, they do not assert "their own legal rights and interests, and [therefore] cannot rest [their] claim[s] to relief on the legal rights or interests of third parties," such as Contreras. *See id.* at 474. Indeed, the vast majority of their 80-page complaint describes allegations related to Contreras and her efforts to enter and reenter the United States, and with the exception of Plaintiffs' claimed financial expenditures, the only relief sought is for Contreras's benefit. *See* Compl. at 54-79. Plaintiffs may prefer that Contreras be present in the United States, but that preference is of no legal significance.

22

Plaintiffs refer to themselves as her "sponsors," but, again, that is not a term with any legal meaning or significance in the context of the F-1 visa regime. There is no rule, regulation, statute or any legal requirement that F-1 visa holders obtain a "host family" or other sponsor. That is why Plaintiffs' complaint cites only "information and belief" for the claim that "all United States colleges and universities require international students to find, or be paired with, sponors to participate in student visa programs." Compl. at 28. Plaintiffs' use of the terms "student designee," "sponsor," and "participant of their choosing" create the the impression that Plaintiffs are akin to employers or entities in other visa contexts who are the actual petitioners to allow an individual to work on their behalf. *See, e.g.*, 8 U.S.C. § 1184(c)(1) ("The question of importing any alien as a nonimmigrant under subparagraph (H), (L), (O), or (P)(i) of section 1101(a)(15) of this title … in any specific case or specific cases shall be determined by the Attorney General, aafter consulation with appropriate agencies of the Government, *upon petition of the importing employer*.") (emphasis added). Those terms, however, have no legal significance in the context of F-1 visa-holders, and Plaintiffs are in no way situated similarly to a petitioning employer; they are mere legal bystanders.

Second, Plaintiffs' invocation of the references to "the general welfare" in the U.S. Constitution's preamble and Article I § 8 likewise demonstrates their failure under the prudential factors. *See* Compl. at 22-23. Plaintiffs appear to argue that standing is conferred on all citizens of the United States to venerate a "[r]ight to [p]romote the [g]eneral [w]elfare," and that such a right is implicated because:

> The federal government used 'public interest' and promotion of 'general welfare' arguments, along with powers bestowed by the Commerce Clause, to justify establishment of the [U.S.] Department of Education in 1979. Regulation of education, and the F-1 nonimmigrant visa and STEM OPT programs that originate therefrom, is clearly in the 'public interest' and promotes 'the general welfare' of the United States.

*Id*. Plaintiffs do not cite any particular authority for this novel proposition, and it instead runs expressly counter to the Supreme Court's admonition that "the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474–75.

Finally, Plaintiffs' complaint does not "fall within the zone of interests to be protected or regulated by the statute." *Id*. As demonstrated by its governing statutory provisions, the F-1 visa program serves the purpose of offering international students the opportunity to pursue education in the United States, thereby providing additional students for U.S. institutions of learning. *E.g.*, 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f)(1)(i). The general public's interest in interacting with or assisting international students is not contemplated, promoted, or regulated in that framework, and Plaintiffs have not demonstrated any provision or caselaw demonstrating that persons in their situation have interests that are either "protected or regulated by the statute" at issue here.

Plaintiffs assert that "[p]rivate entities and individuals are enticed by government agencies to serve as sources of tuition loans, grants, scholarships, and sponsorships for F-1 visa recipients." Compl. at 23. Without any specific factual

24

allegation or citation, Plaintiffs state "[t]he Department of State and DHS [neither of which is named in this lawsuit] promote public and private participation in the F-1 nonimmigrant student visa an STEM OPT programs," and that "Congress specifically structured student visa statutes to require a partnership between public entities and private entities/individuals." *Id*. As stated, however, there is no requirement or provision governing the F-1 visa program that involves any individual or entity other than the student and the participating learning institution, and Plaintiffs point to no specific authority to the contrary. Plaintiffs also do not present any allegation that they were specifically "enticed" by any of the Defendants to pay for Contreras's expenses. Instead, the complaint makes clear that "a cousin put Contreras in contact with … Fife." Compl. at 29. In short, Plaintiffs have failed their burden to demonstrate that their complaint falls within the F-1 visa program's zone of interests.

4) *Conclusion*

Plaintiffs have not demonstrated any legal authority or made any allegation that would satisfy their legally cognizable interest in continuing to provide financial assistance to Contreras. Accordingly, they have failed to meet their burden, and their lack of standing prevents this Court's jurisdiction over their claims.

## II.   **Plaintiffs Failed to State a Claim.**

Plaintiffs have also failed to state a claim upon which relief may be granted. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (holding that "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

25

A.  Plaintiffs' Claims Pursuant to 42 U.S.C. § 1983 Should Be Dismissed.

Five of the ten counts raised in Plaintiffs' complaint cite 42 U.S.C. § 1983 as the basis for the claim of relief. Doc. 1 at 59-73 (Counts III, IV, V, VI, and VII). That statute creates a cause of action for individuals against officials acting under color of *state* law based on alleged constitutional violations. *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998). Defendants are all named in their capacities as *federal* officials acting under color of *federal* law, and there is no allegation of any DHS official acting pursuant to state law. Doc. 1 at 2-3. Accordingly, section 1983 does not provide any cause of action for Plaintiffs against the Defendants named here. *Hindes*, 137 F.3d at 158. Therefore, each of these counts fails to state a claim and should be dismissed.

B.  Plaintiffs' APA Claim Should Be Dismissed.

District courts have jurisdiction to review agency action under 28 U.S.C. § 1331, "subject only to preclusion-of-review statutes created or retained by Congress." *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 126 (3d Cir. 2012) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The Administrative Procedure Act (APA) provides for judicial review of agency action and requires courts to "hold unlawful and set aside agency action, findings, and conclusions" if, when challenged on the basis of legal claims such as presented here, such action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, the APA bars judicial review where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2).

The INA provides that "no court shall have jurisdiction to review ... any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of ... the Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). The INA's "jurisdiction-stripping language ... applies not to all decisions the [Secretary] is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary]'s discretion." *Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006). *See also Bakran v. Sec'y, United States Dep't of Homeland Sec.*, 894 F.3d 557, 562 (3d Cir. 2018). As already established, jurisdiction is barred here under 8 U.S.C. § 1252. Accordingly, Plaintiffs likewise failed to state a claim under the APA.

C.   Plaintiffs' Mandamus Claim Should Be Dismissed.

As a basis for jurisdiction, Plaintiffs' complaint invokes general jurisdictional statutes found at 28 U.S.C. §§ 1331 and 1361.  It is well-established, however, that these jurisdictional grants do not constitute waivers of sovereign immunity.  Under the principle of sovereign immunity, the United States is only subject to suit where it has expressly consented to such suit by statute. *See Lane v. Pena,* 518 U.S. 187, 192 (1996). The scope of such waiver is to be strictly construed in favor of the sovereign. *United States v. Williams,* 514 U.S. 527, 531, 08 (1995). A waiver of sovereign immunity is a prerequisite for jurisdiction. *In re Univ. Med. Ctr.,* 973 F.2d 1065, 1085 (3d Cir. 1992). Although section 1331 "provides that the district court shall have original jurisdiction in all civil actions arising under the Constitution, laws, or treaties of the United States," it "cannot by itself be construed as constituting a

waiver of the government's defense of sovereign immunity." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (quoting *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458–59 (9th Cir. 1985).

Similarly, section 1361, the mandamus statute, provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  Although not addressed by the Third Circuit, the majority of circuit courts of appeal have concluded that this statute does not, by itself, waive sovereign immunity.[5]  *See also Hou Hawaiians v. Cayetano*, 183 F.3d 945, 947 (9th Cir. 1999). This court has indicated that it "rejects the notion that relief under [section 1361] is barred by sovereign immunity," but that ruling presents limited persuasive authority as it was not published and later abrogated on other grounds. *See Steinbach v. Fed. Bur. of Prisons*, 339 F.Supp.2d 628, 630 (D.N.J. Oct. 13, 2004). More recently, at least one sister district court in the Third Circuit has expressly adopted the majority approach. *Berkery v. C.I.R.*, No. 09-cv-4944, 2010 WL 99376, at *4 (E.D. Pa. Jan. 11, 2010). Moreover, the Third Circuit has demonstrated its inclination to follow the majority approach. *See Volcy v. United States*, 469 F.App'x 82, 83 (3d Cir. 2012) (holding that "to the extent [plaintiff] invoked jurisdiction

---

[5] The First, *Muirhead v. Mecham,* 427 F.3d 14, 18 (1st Cir. 2005), Second, *Doe v. Civiletti,* 635 F.2d 88, 94 (2d Cir. 1980), Fifth, *McClain v. Pan. Canal Comm'n,* 834 F.2d 452, 454 (5th Cir. 1987), Eighth, *Essex v. Vinal,* 499 F.2d 226, 232 (8th Cir. 1974), Ninth, *Odd v. United States,* No. 91–35954, 1992 WL 184330, at *1 (9th Cir. Aug.4, 1992), and D.C. Circuits, *Wash. Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 901 (D.C.Cir.1996), have all found that the Mandamus Act is not a general waiver of sovereign immunity. Only the Seventh and Tenth Circuits have disagreed. *See Vishnevsky v. United States,* 581 F.2d 1249, 1255–56 (7th Cir. 1978); and *Trackwell v. U.S. Gov't,* 472 F.3d 1242, 1244–45 (10th Cir. 2007).

pursuant to 28 U.S.C. § 1361, the District Court did not err in dismissing the petition."). Consistent with *Berkery* and *Volcy*, this court should likewise follow the majority approach and hold that sovereign immunity was not waived by the mandamus statute and dismiss Plaintiffs' complaint accordingly.

Additionally, Plaintiffs cannot prevail on any mandamus claim because they failed to demonstrate in their complaint that they have no other adequate means to attain their desired relief and that their right to the writ is clear and undisputed. *Hinkel v. England*, 349 F.3d 162, 164 (3d Cir. 2003) ("[t]here are two prerequisites to issuing a writ of mandamus. Appellants must show that (1) they have no other adequate means to attain their desired relief; and (2) their right to the writ is clear and indisputable."). Consistent with the tenet that mandamus is an extraordinary remedy, courts will correct only "transparent violations of a clear duty to act." *In re Aiken County*, 645 F.3d 428, 436 (D.C. Cir. 2011).

Plaintiffs' complaint does not identify any clear, undisputed duty owed by Defendants to Plaintiffs or others who are similarly situated. Instead, they assert in conclusory fashion that "Defendants' failure to discharge their statutory obligations under the I.N.A. was injurious to Plaintiffs." Compl. at 76. Plaintiffs, in this instance, are mere bystanders to the administration of the immigration system, and the INA's jurisdictional channeling provisions make plain that Plaintiffs have no "clear and indisputable" right in this context. Indeed, under 8 U.S.C. § 1252, Contreras could not challenge her own expedited removal. Further, Plaintiffs do not identify any

29

interests countenanced in the extensive regulations governing institutions of learning and students involved in the F-1 visa scheme.

In short, Plaintiffs failed their burden to affirmatively plead a right to the writ of mandamus to obtain their requested relief, and certainly not any right that is "clear and indisputable." They cannot, therefore, demonstrate that they are entitled to the relief they seek, and this Court should dismiss their mandamus claims under Fed. R. Civ. P. 12(b)(6).

## **CONCLUSION**

For the foregoing reasons Defendants respectfully request that this Court dismiss Plaintiffs' complaint in its entirety.

Dated: September 24, 2019   Respectfully submitted,

          JOSEPH H. HUNT
          *Assistant Attorney General*

          WILLIAM C. PEACHEY
          *Director*

          GLENN M. GIRDHARRY
          *Assistant Director*

          SAMUEL GO
          *Senior Litigation Counsel*

          By: */s/ T. Benton York*
          T. BENTON YORK (Va. Bar #94324)
          *Trial Attorney*
          U.S. Department of Justice, Civil Division
          Office of Immigration Litigation – DCS
          P.O. Box 868, Ben Franklin Station
          Washington, DC 20044
          Tel: (202) 598-6073
          Email: Thomas.B.York@usdoj.gov
          *Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2019, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of New Jersey by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


By:  <u>*/s/ T. Benton York*</u>
     T. BENTON YORK
     Trial Attorney
     United States Department of Justice
     Civil Division

31