Jorge F. Coombs, Esquire *(NJ Attorney ID # 017962002)*
YOUNGBLOOD FRANKLIN
SAMPOLI & COOMBS, P.A.
1201 New Road, Suite 230
Linwood, NJ  08221
Tel:     (609) 601-6600
Fax:    (609) 601-6601
E-mail: jcoombs@youngbloodlegal.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**
**(CAMDEN VICINAGE)**

| | |
|---|---|
| **H. FRANK FIFE** and **JOHN G. AND ELIZABETH STEELMAN FOUNDATION**, <br><br> Plaintiffs, <br><br> v. <br><br> **WILLIAM P. BARR**, in his official capacity as Attorney General of the United States and executive of the U.S. Department of Justice; <br><br> **KEVIN K. MCALEENAN**, in his official capacity as Acting Secretary of the U.S. Department of Homeland Security; <br><br> **KENNETH T. CUCCINELLI**, in his official capacity as Acting Director of U.S. Customs and Border Protection; <br><br> **MARK A. MORGAN**, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; and <br><br> **JUDSON W. MURDOCK, II**, in his official capacity as Houston CBP Director of Field Operations, individually, jointly, separately and in the alternative, <br><br> Defendants. | CIVIL ACTION <br><br> CASE NO.: 1:19-cv-13912-NLH-AMD <br><br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO STAY FIVE YEAR ENTRY BAR** |

# **TABLE OF CONTENTS**

BACKGROUND ………………………………………………………………………………... 3

I.       Prior Extrajudicial History........................................................................................... 3

II.     Procedural History………………………………………………………………….. 4

STANDARD OF REVIEW……………………………………………………………………… 4

ARGUMENT…………………………………………………………………………………….. 6

I.       Stay Applicant Is Likely To Succeed On the Merits………………………………….. 6

II.     Applicant Will Be Irreparably Injured Absent a Stay…………………………………7

III.    Issuance of a Stay Will Not Injure Defendants and Is In the Public Interest ………... 10

CONCLUSION…………………………………………………………………………………. 12

Plaintiffs, H. Frank Fife and the John G. and Elizabeth Steelman Foundation, hereby move the Court to stay the five (5) year entry bar, imposed by Defendants upon Erika Contreras Cruz (hereinafter referred to as "Contreras" or "student visa designee"), pursuant to I.N.A. § 212(a)(9), pending final resolution of the instant litigation. Contreras was Plaintiffs' F-1 nonimmigrant student visa designee, and future STEM OPT training extension applicant, prior to Defendants' imposition of the entry bar. Contreras is an essential witness and Plaintiffs cannot adequately plan, prepare, or comply with Federal Rule of Civil Procedure 26 without direct access to her within the United States. As explained below, a stay of the entry bar is essential to Plaintiffs' pre-trial preparation and discovery. Proceeding in the absence of a stay would be inefficient, waste the resources of the Court and all parties, and could result in biased rulings that may serve as the basis for appeal. Moreover, having an essential witness available only by telephonic or digital means will impose a heavy burden on the Court and all parties due to the detailed nature of discovery in this matter.

## BACKGROUND

**I.    Prior Extrajudicial History**

The instant litigation stems from a July 29, 2017 Determination of Inadmissibility and July 30, 2017 Order of Expedited Removal which led to Defendants' imposition of a five (5) year entry bar on Contreras. On February 28, 2018 Plaintiffs' counsel submitted a letter brief to Defendants requesting dialog regarding permission to have Contreras reenter the United States on her F-1 nonimmigrant student visa. Defendants responded to Plaintiffs' letter brief on both March 26, 2018 and April 4, 2018. Following the conflicting information Defendants provided in their responses, on July 16, 2018 Contreras appeared at the United States Consulate in

Monterrey, Mexico, and was informed that she would not be allowed to continue her studies in the United States.

## II.     Procedural History

Finding no reasonable avenue for relief, Plaintiffs filed the instant action on June 17, 2019.  Plaintiffs filed a Certificate of Service on July 9, 2019.  Counsel for Defendants filed a Notice of Appearance on August 20, 2019.  On August 30, 2019 counsel for the parties exchanged e-mails and agreed to extend Defendants' time to answer or respond to the Complaint to September 24, 2019.  Counsel also discussed the possibility of lifting the five (5) year entry bar to allow Contreras to be physically present in the United States for discovery, pre-trial preparation and, if necessary, to provide testimony at trial.  Defendants communicated through counsel that they could not agree to lift the entry bar for purposes of this litigation.

## STANDARD OF REVIEW

Generally, federal courts lack authority to order the parole or admission of a witness for the purposes of discovery or trial.  The Supreme Court has, "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787 (1977) at 792.  Pursuant to 8 C.F.R. § 212.5(a) the authority to parole an alien into the United States typically rests within the discretion of the Secretary of the U.S. Department of Homeland Security.  The conflict in the instant matter is that the Secretary of the U.S. Department of Homeland Security is a named defendant.  Therefore, Plaintiffs have no recourse but to petition the Court for a stay of the five (5) year entry bar Defendants continue to impose on the student visa designee.

During the pendency of judicial review, the administrative action under review remains in force unless a party moves for a stay of same. After a hearing on the motion, the court may stay the administrative action after a showing that irreparable injury will occur absent the stay and that the moving party is likely to prevail on the merits of the case.

Accordingly, in *Nken V. Holder*, 556 U. S. \_\_\_\_ (2009), the Supreme Court of the United States held that federal courts can stay administrative decisions and orders of the executive branch, including those involving immigration matters, pending judicial review if petitioners can satisfy the "traditional" stay factors. As Chief Justice Roberts expressed in the majority opinion in *Nken*, the Court's power to grant a stay pending review,

> …was described as part of a court's "traditional equipment for the administration of justice." *Scripps-Howard,* 316 U.S. 4, at 9–10. That authority was "firmly imbedded in our judicial system," "consonant with the historic procedures of federal appellate courts," and "a power as old as the judicial system of the nation." *Id.*, at 13, 17.

The holding in *Nken* further defines how stays operate pending judicial review,

> (i)t does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability. See Black's, *supra*, at 1413 (6th ed. 1990) (defining "stay" as "a suspension of the case or some designated proceedings within it").

The *Nken* Court cautioned that stays should not to be confused with injunctive relief, as they achieve results,

> … by temporarily suspending the source of authority to act - the order or judgment in question - not by directing an actor's conduct. A stay "simply suspend[s] judicial alteration of the status quo," while injunctive relief "grants judicial intervention that has been withheld by lower courts."

Chief Justice Roberts concluded the majority opinion by reiterating that the "traditional" stay factors outlined by the Court in *Hilton* v. *Braunskill*, 481 U.S. 770, 776 (1987), continue to govern requests for a stay pending judicial review,

> (u)nder that standard, a court considers four factors:
>
> "(1)   whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2)   whether the applicant will be irreparably injured absent a stay;
>
> (3)   whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4)   where the public interest lies."

Once an applicant has met the first two *Hilton* factors, the Count in *Nken* held that,

> … the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party. In considering them, courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible, as some courts have concluded. See, *e.g.*, *Mohammed*, 309 F. 3d, at 102 (Government harm is nothing more than "one alien [being] permitted to remain while an appeal is decided"); *Ofosu*, *supra*, at 699 (the Government "suffers no offsetting injury" in removal cases).

## **ARGUMENT**

### **I.   Stay Applicant Is Likely To Succeed On the Merits**

As to the first of the four *Hilton* factors, "whether the stay applicant has made a strong showing that he is likely to succeed on the merits," Plaintiffs articulated ten (10) independent counts for relief in the Complaint filed June 17, 2019.  Plaintiffs submitted sixty-four (64) exhibits, encompassing approximately 218 individual document pages, in support of their claims. Plaintiffs' submissions refute Defendants' accusation of unlawful employment of an alien pursuant to 8 U.S.C. § 1324a.  Upon information and belief, Defendants used said accusation to punish and strip Plaintiffs of constitutionally protected liberty and property interests without notice or the opportunity to defend.  Accordingly, Plaintiffs have made a strong showing that they are likely to prevail on at least one, if not more, of the ten counts presented.  A contrary

finding by the Court would suggest that the "minimum requirements" of due process [1) the right to notice of the proposed government action and the grounds asserted for same; 2) the right to review opposing evidence; 3) the opportunity to be heard in person by a "neutral and detached" tribunal; 4) the right to present witnesses and documentary evidence in one's favor; 5) the right to cross-examine adverse witnesses; 6) the requirement that a record of the evidence presented be prepared; and 7) the requirement that the tribunal prepare written findings of fact and reasons for its decision] outlined in *Morrissey v. Brewer*, 408 U.S. 471 (1972) at 489, have no application to the case at bar.  In such a scenario student visa sponsors would be subject to loss of their liberty and property interests based on unilateral determinations made by Defendants during closed and non-reviewable procedures.  Such a finding would be inapposite to the flexibility due process requires in this "particular situation."  Furthermore and as articulated in the Complaint, the constitutional validity of the five (5) year bar imposed on Contreras is a matter in controversy. Plaintiffs reassert that the absence of due process afforded to them by Defendants during the government action that led to the imposition of the entry bar was unconstitutional and the grounds provided for the imposition of the entry bar were unlawful.

**II.     Applicant Will Be Irreparably Injured Absent a Stay**

In line with the second of the four *Hilton* factors, Plaintiffs submit they have been irreparably injured, and will be subject to further irreparable harm, absent a stay.  Plaintiffs maintain that Defendants targeted and promoted the benefits of small business owner participation in the F-1 non-immigrant student visa and STEM OPT programs.  As a result of Defendants' enticement, Plaintiffs participated in the program with Contreras until they were irreparably injured by Defendants' July 29, 2017 Determination of Inadmissibility and July 30, 2017 Order of Expedited Removal.  The lack of notice, unclear facts, and unsupported reasoning

behind Defendants' actions prompted Plaintiffs to file Freedom of Information Act (hereinafter referred to as "FOIA") requests. Plaintiffs waited months for FOIA responses that failed to show sufficient proof to support Defendants' violations of Plaintiffs' liberty interests, property interests, and right to due process. In all, Plaintiffs lost more than two (2) years pursuing fruitless procedural and discretionary relief from Defendants. Plaintiffs' injuries also include thousands of dollars in lost sponsorships, scholarships, and legal fees, as Defendants have barred Contreras from participating in either the F-1 student visa or STEM OPT programs. Clearly, Plaintiffs have already suffered irreparable injury by losing time, money, and the ability to sponsor the student visa designee of their choosing.

Even so, Plaintiffs' injuries are not isolated to events in the past. Without a stay of the entry bar Plaintiffs will continue to be irreparably injured by the loss of even more time, mounting legal and litigation expenses, and the continued inability to participate in the F-1 visa and STEM OPT programs with the student visa designee of their choosing. As the Court is well aware, federal litigation of this nature could continue for years into the future. Unfortunately, time is of the essence in education. Should Contreras not be allowed to reenter the United States at least 60 days prior to the beginning of Atlantic Cape Community College's Spring 2020 semester (effectively November 1, 2019) she will have lost another full year of study. Plaintiffs could ultimately prevail on the merits of this case but, by that unknown future date, their student visa designee may no longer be in the same personal or financial position to continue with such an educational program. Continued disruption of Plaintiffs' involvement in the F-1 visa and STEM OPT programs could destroy any remaining opportunities to achieve the program goals Defendants promised Plaintiffs when they enticed their participation in same.

In addition to lost time, protracted litigation is costly to any litigant. Over the next few years Plaintiffs will only add to the thousands of dollars they have already expended investigating and litigating this matter. Absent the requested stay, Plaintiffs will continue to be barred from participating in the F-1 visa and STEM OPT programs with the student visa designee that met their sponsorship criteria and in which they already have a vested interest in seeing a completion of both a college degree and practical training program extensions.

Defendants' reluctance to lift the five (5) year entry bar to allow Contreras to be physically present in the United States for discovery, pre-trial preparations, and to provide testimony at trial risks causing Plaintiffs further irreparable injury at both pre-trial and trial levels. Although Defendants may wish to limit the scope of discovery to the administrative record, Contreras is an essential fact witness because she has firsthand knowledge of the actions, procedures, and documents surrounding Defendants' July 29, 2017 Determination of Inadmissibility and July 30, 2017 Order of Expedited Removal. Plaintiffs and their counsel are entitled to direct personal access to this critical fact witness. Moreover, having an essential witness available only by remote means imposes a heavy burden on the Court and all parties due to the detailed nature of discovery in this matter. The fidelity and accuracy of a remote witness would also be in question, as Contreras will likely need the services of an English-language interpreter. Proceeding in the absence of a stay would be inefficient, waste the resources of the Court and all parties, and could result in biased rulings that may serve as the basis for appeal.

Retention of the five (5) year entry bar perpetuates a continuing harm upon Plaintiffs. The entry bar effectively operates as an ongoing penalty against Plaintiffs, who argue they have been deprived of due process and were punished by Defendants without being properly noticed of, or formally charged with, any wrongdoing. The entry bar continues to harm Plaintiffs

because their student visa designee cannot continue to complete the college degree they invested time, money, and effort to achieve.

### III.     Issuance of a Stay Will Not Injure Defendants and Is In the Public Interest

The last two stay factors in a *Nken* inquiry require applicants to assess the harm an approved stay would have on the opposing party and also weigh it against the interests of the public.  Again, because Defendants are government entities those two factors merge.  Presently, Contreras has completed more than two (2) years of the five (5) years of entry bar imposed.  A stay of the remaining three (3) years of the bar, until the ultimate disposition of this matter, would pose no harm to Defendants.  F-1 student visas are temporary nonimmigrant visas by definition and, to clarify, Plaintiffs are not seeking immigrant status for Contreras.  Furthermore, Plaintiffs agree to supervise and monitor the whereabouts of their student visa designee while she is present in the United States and, if necessary, would ensure her timely departure.  Plaintiffs would also agree to guarantee Contreras' presence, subject to any penalties the Court would deem appropriate and stipulate for failure to comply, as part of any grant of the motion herein requested.  Plaintiffs' assurances eliminate any perceived risk of injury to Defendants.  In this instance a stay of the entry bar would operate similarly to a subpoena *ad testificandum*, by guaranteeing Contreras' presence to give oral testimony for use at a hearing or trial.  A stay would simply allow the student visa designee to continue her studies in the United States and ensure her availability for discovery, pre-trial preparation, and, should resolution of the issues at bar require an evidentiary hearing, to provide testimony.

Contreras has a vested interest in returning to her country after completing her education and future occupational training extension.  Her family, friends, and significant personal business

and property interests all remain in her native Mexico. As such, Contreras poses little, to no, overstay risk if she was allowed to reenter the United States as an F-1 student visa holder.

If the requested stay were granted, Contreras would reenroll and continue to pay tuition at Atlantic Cape Community College in Mays Landing, New Jersey. The tuition and incidental expenses paid by foreign students benefit local, state, and national economies. Foreign students educated within institutions of higher learning in the United States, in turn, create a larger pool of applicants eligible for future skilled work-based visas. Allowing Contreras and Plaintiffs to meet the goals of the F-1 nonimmigrant student visa and STEM OPT programs is certainly in the best interests of both Defendants and the public.

Neither Defendants nor the general public face any articulable harm should the Court rule in favor of the stay. Contreras has no criminal record and poses no national security or terrorist threat to the United States. Conversely, Contreras' continued studies in the United States complement the public's interests in advancing higher education and reducing taxpayers' obligations through increased public college matriculation and tuition receipts. In effect, allowing Contreras to return to her studies would also serve to mitigate Plaintiffs' damages and harm to the public interest.

Defendants would not be unduly prejudiced or disadvantaged by Contreras' physical presence or testimony. In fact, Defendants routinely grant temporary Port Parole, Form I-515A, or Significant Public Benefit Parole (SPBP) under 8 U.S.C. § 1182(d)(3)(A) to alien witnesses in civil proceedings who applied for nonimmigrant visas but were determined to be ineligible. Such entries are granted by the Secretary of State, in conjunction with the Secretary of the U.S. Department of Homeland Security, on a case-by-case basis for humanitarian reasons or because of actions that are deemed a significant public benefit.

## CONCLUSION

Motions to stay administrative actions may be made during the pendency of a judicial review. The Court may stay the five (5) year entry bar if Plaintiffs have shown that irreparable injury will occur absent the stay and that they are likely to prevail on the merits of the case. For the reasons articulated above, Plaintiffs believe they have met the "traditional" stay factors and respectfully request that the Court stay the entry bar presently imposed on Contreras, Plaintiff's student visa designee, so that she may: 1) reenter the United States under the F-1 student visa Defendants previously reinstated to continue her studies and future STEM OPT training extension program; and 2) be physically present in the United States for discovery, pre-trial preparation, and, if resolution to the issues at bar warrant an evidentiary hearing, to provide testimony at trial regarding the instant matter.

                                  Respectfully submitted,

                                  YOUNGBLOOD FRANKLIN
                                  SAMPOLI & COOMBS, PA

Dated: September 27, 2019        By: _____
                                                JORGE F. COOMBS, ESQUIRE